1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Aguilera Law Firm, P.C.*

*314 South Sixth Avenue*
*Tucson, Arizona 85701*
*Telephone: (520) 884-1234*
*Facsimile: (520) 884-9687*
*e-mail: aguileralawfirm@gmail.com*
Attorneys for Defendant Ignacio Robles-Sotelo
By: Benjamin W. Aguilera, Arizona Bar #020969

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **United States of America,** ) | **Case No. 21-07149M** |
| ) | |
| **Plaintiff,** ) | **MOTION TO DISMISS** |
| ) | **ALL CHARGES** |
| **v.** ) | |
| ) | |
| **Ignacio Robles-Sotelo,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

It is expected that excludable delay under Title 18, United States Code, Section

3161(h)(1)(D), could occur as a result of this motion or an order based thereon.

COMES NOW, Defendant Ignacio Robles-Sotelo, by and through counsel

undersigned and hereby requests this Honorable Court dismiss the complaint (case) for

failure to indict in a timely manner and for failure to comply with the Bail Reform Act

provisions.  This motion is more fully supported by the following Memorandum of

Points and Authorities set forth herein.

*///*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

**PROCEDURAL HISTORY**:

On April 19, 2021, Ignacio Robles-Sotelo was arrested on charges that he re-entered the United States without permission after having been deported, in violation of 8 U.S.C. §1326.  He made his initial appearance on April 20, 2021. On April 27, 2021, a consent to detention was submitted on behalf of Mr. Robles-Sotelo and an Order of Detention was entered thereafter.  On May 17, 2021 a Motion to Reopen Detention Hearing was filed and a hearing was held pursuant thereto on May 20, 2021. An Order Setting Conditions of Release was issued by Magistrate Judge Rateau on that same date. Instead of being released, however, Mr. Robles-Sotelo was transferred to ICE custody where he remains detained as of the date of this writing.

**LAW & APPLICATION:**

**The Government violated the Speedy Trial Act when it failed to indict Mr. Robles-Sotelo in a timely manner. Dismissal is the remedy.**

The Sixth Amendment guarantees all criminal defendants "the right to a speedy and public trial." *U.S. Const. amend. VI.* Despite this guarantee, however, the Sixth Amendment does not prescribe any specified length of time within which a criminal trial must commence. *See id.* To give effect to this Sixth Amendment right, Congress enacted the Speedy Trial Act, which sets specified time limits after arraignment or indictment within which criminal trials must commence. Pub. L. No. 93-619, 88 Stat. 2076 (1975); *see Furlow v. United States*, 644 F.2d 764, 768–69 (9th Cir. 1981) (per curiam)

(describing the Speedy Trial Act as the Sixth Amendment's "implementation"). The Speedy Trial Act, 18 U.S.C. § 3161 et seq., is designed "to protect a defendant's constitutional right to a speedy ... trial, and to serve the public interest in bringing prompt criminal proceedings." *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993).

18 U.S.C. § 3161(b) provides that "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Recognizing the need for flexibility depending on the circumstances of each case, however, the Speedy Trial Act "includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see* 18 U.S.C. § 3161(h). A court may exclude periods of delay resulting from competency examinations, interlocutory appeals, pretrial motions, the unavailability of essential witnesses, and delays to which the defendant agrees. 18 U.S.C. § 3161(h). None of these excludable delays are applicable in this circumstance. Not even the ends of justice provision, allowing for the exclusion of time where a district court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," *Id.* § 3161(h)(7)(A), can save this fundamental error of criminal procedure.

The fact is that there is no provision that rescues this case from inevitable dismissal. The Speedy Trial Act was violated here. No indictment has been issued. This

is a fundamental error that requires dismissal as relief. Mr. Robles-Sotelo was not

indicted as provided for, very clearly, in the Federal Rules of Criminal Procedure.

> **The Executive Branch can comply with both the Bail Reform Act and the provisions of the INA governing removal of an alien while a criminal case is pending. The Government violated the Bail Reform Act when it failed to comply with Judge Rateau's release order subsequent to the Detention Hearing.**

In *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015), the Ninth

Circuit made clear what has been clear in many other Circuits and/or Districts throughout

the country, that is, the possibility of a criminal defendant's removal from the United

States is not, in and of itself, a basis to detain the defendant under the Bail Reform Act.

The Ninth Circuit first recognized Congress' choice not to exclude removable aliens

from consideration for release in criminal proceedings. *Santos-Flores*, 794 F.3d at 1090.

Rather, 18 U.S.C. § 3142(d) provides that when a court determines that a defendant is

not a citizen of the United States or lawfully admitted for permanent residence and that

the defendant may flee or pose a danger, the court shall order temporary detention for not

more than ten days and direct the government "to notify 'the appropriate official of the

Immigration and Naturalization Service.' 18 U.S.C. § 3142(d). A determination that the

alien may flee or pose a danger – voluntarily acts – is required to impose even this

temporary detention." *Santos-Flores*, 794 F.3d at 1091. If immigration authorities do not

take custody of the defendant during this ten day period, Congress directs the court to

treat the defendant in accordance with other provisions in the Bail Reform Act,

4

"notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion provisions." *Id.* (*quoting* 18 U.S.C. § 3142(d)).

The *Santos-Flores* court reasoned that "[r]einstatement of a prior order of removal is neither automatic nor obligatory." 794 F.3d at 1091. Immigration officials may decide to forego reinstatement for a variety of reasons, including the exercise of prosecutorial discretion. *Id.* Indeed, the "government may also exercise its judgment that the public interest in criminally prosecuting an alien outweighs the interest in swiftly removing him." *Id.* However, if the government makes the choice to deliver the alien to the U.S. Attorney's Office for prosecution instead of removing him immediately, "the government may not use its discretionary power of removal to trump a defendant's right to an individualized bail determination under the Bail Reform Act." *Id.*

As the court in *Santos-Flores* discussed, various district courts have thoroughly explained that the "risk of nonappearance" referred to in 18 U.S.C. § 3142 must involve an element of volition. *Id.* In doing so, these district courts harmonized the disagreement that has materialized in the utilization of the Bail Reform Act and Immigration and Nationality Act by two separate departments within the Executive Branch: the U.S. Department of Justice and the U.S. Department of Homeland Security. That strain is the Executive Branch's desire to both remove alien defendants from the United States under the INA, and then prevent that removal by having the defendant detained pending trial under the Bail Reform Act because the defendant presents a "risk of flight."

In *United States v. Trujillo-Alvarez*, 900 F. Supp.2d 1167, 1178-79 (D. Or. 2012), a case cited and relied upon in *Santos-Flores*, the district court illustrated with no uncertainty that when there is a criminal prosecution pending, the Bail Reform Act takes precedence over the Immigration and Nationality Act. The court came to this conclusion for two correlated rationales. First, the court explained that under the INA when an alien is subject to a removal order, "the Executive Branch 'shall remove the alien from the United States within a period of 90 days.'" ("the removal period") *Trujillo-Alvarez*, 900 F. Supp. 2d at 1174 (*citing* 8 U.S.C. § 1231(a)(1)(A)). That removal period only begins to run on the latest of the following: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. *Id.* (citing 8 U.S.C. § 1231(a)(1)(B)). The court reasoned that, under subsection three, the 90-day removal period had not yet commenced because "a person who has been released subject to conditions of pretrial supervision is still 'confined' because they are subject to restraints not shared by the public generally that significantly confine and restrict their freedom." *Id.* at 1175. Thus, the court concluded that "there is no legal requirement, or even any practical necessity, that ICE detain [the defendant] in order to remove and deport him before the pending criminal proceedings can be concluded." *Id.* This is precisely the circumstance facing Mr. Robles-Sotelo. He

has been released subject to conditions of pretrial supervision, he is still "confined" because he is subject to restraints resulting in confinement and restrictions on freedom.

Second, the court found that two regulations issued under the authority of the INA revealed the Executive Branch's steadfastness that criminal prosecutions should take priority over removal and deportation. *Id.* at 1178-79. The first regulation provides that "[n]o alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3." *Id*. at 1178 (*quoting* 8 C.F.R. § 215.2(a)). The second regulation says that the departure of any alien shall be "deemed prejudicial to the interests of the United States" if, among other reasons, the alien is a party to "any criminal case." *Id.* at 1179 (*quoting* 8 C.F.R. § 215.3(g)). The court concluded that these INA regulations demonstrate that when a criminal case is pending against a defendant alien, the criminal proceeding takes precedence over the alien's removal, and these regulations are "fully consistent with the statutory provisions of the INA." *Id.*

The court further reasoned, like the Ninth Circuit in *Santos-Flores*, that in the Bail Reform Act itself "Congress explained how to reconcile the release and detention provisions of that statute with the administrative deportation provisions of the INA." *Id.* If a court determines that a criminal defendant has no legal status to be in the United States and may flee, the court may temporarily detain the defendant for up to ten days to allow immigration authorities to take custody of the defendant and commence removal proceedings. *Id.* (*citing* 18 U.S.C. § 3142). If the immigration authorities decline to take

custody of the defendant, then the court treats the alien defendant like any other

defendant under the Bail Reform Act, without regard to the applicability of other

provisions of law governing release pending trial or deportation or exclusion

proceedings. *Id.* Thus, if Congress wanted to bar aliens with immigration detainers from

eligibility for release under the Bail Reform Act, it could have readily done so, but it did

not. *Id.*

Moreover, the Ninth Circuit revealed that the Executive Branch had a choice to

make, and it essentially had two choices: remove the defendant from the United States or

face dismissal of the criminal charges:

> If the Executive Branch chooses not to release the Defendant and instead decides to abandon criminal prosecution of the pending charge and proceed directly with Defendant's removal and deportation, the law allows the Executive Branch to do that. If, however, the Defendant is not released pending trial as directed by the Magistrate Judge pursuant to the BRA, the pending criminal prosecution of the Defendant may not go forward. To hold otherwise would deprive the Defendant of his statutory right to pretrial release under the Bail Reform Act and possibly even deprive the Defendant of his Fifth Amendment and Sixth Amendment rights to due process and effective assistance of counsel, respectively.

*Id.* at 1170. The court concluded that there is not a third option because **"[w]hat neither ICE nor any other part of the Executive Branch may do . . . is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA."** *Id.* at 1179. (Emphasis added.)

Before the Ninth Circuit decided *Santos-Flores*, numerous other district courts had

likewise concluded that the probability that a criminal defendant will be removed from

the United States while the criminal case is pending is not a sufficient reason for

1  detention under the Bail Reform Act. These district courts generally reason, like the

2  court did in *Trujillo-Alvarez*, that: (1) the 90-day removal period under the INA has not

3  started because a defendant is still "confined" while subject to pretrial release conditions,

4  and (2) the regulations issued under the INA, which show that the criminal proceeding

5  takes precedence over removal proceedings, allow the Executive Branch to obtain a

6  departure-control order or otherwise stay the removal order while the criminal case is

7  pending.[1] Indeed, in *Castro-Inzunza* (an unpublished decision relied upon in *Trujillo-*

8  *Alvarez)* the Ninth Circuit likewise concluded that the 90-day removal period under the

9  INA had not started because a defendant was still "confined" while subject to pretrial

10 release conditions, and that the government had failed to show that "it lacks the ability to

11 stay or defer the defendant's removal through a stay or departure control order if it

_____

[1]  *See United States v. Stepanyan*, 2015 WL 4498572 (N.D. Cal. 2015) ("The government has not shown that it lacks the ability to stay or defer defendant's removal through a stay or departer control order," and the court "sees no reason under § 215.3(g) why it could not."); *United States v. Valdez-Lara*, 2015 WL 1456530 (N.D. Ohio 2015) (The regulations issued under the INA "have outlined a priority for prosecution over removal. A conclusion that is consistent with the interpretation that removal periods do not begin until release from detention or confinement has been completed."); *United States v. Blas*, 2013 WL 5317228 (S.D. Ala. 2013) (Court agrees with *Trujillo-Alvarez* that 90-day removal period has not started since a person on pretrial release is still "confined" for purpose of that removal provision of the INA, and the regulations issued under the INA, which demonstrate a determination that a criminal case takes precedence over removal and deportation, are consistent with this statutory provision); *United States v. Sanchez-Martinez*, 2013 WL 3662871 (D. Col. 2013) (The INA "seems to permit the Secretary [of the Department of Homeland Security] some discretion in determining when deportation will occur following reinstatement of the removal order" and the prosecution has not indicated whether it has attempted to obtain a departure-control order pursuant to the regulations issued under the INA).

believes that his removal before trial would be contrary to the public interest." 2012 WL 6622075 * 1.

At least one district court has found that the focus on the regulations issued under the INA "is 'not [on] deportation or removal cases,' but rather on 'aliens seeking to depart the United States voluntarily.'" *United States v. Marinez-Patino*, 2011 WL 902466, * 6 (N.D. Ill. 2011) ("[W]hile Section 215.3(j) authorizes a departure-control order for aliens 'where doubt exists whether such alien[s] [are] departing voluntarily from the United States' it specifically excludes 'alien[s] who [are] departing . . . subject to an order issued in . . .deportation proceedings.'" (*quoting* 8 C.F.R. § 2l5.3(j)). Nevertheless, this court found that these regulations represent a "determination that, when a party to a pending criminal case exits the country without the prosecuting authority's consent, his absence is prejudicial to the interests of the United States." *Marinez-Patino*, 2011 WL 902466 at *7. As such, the court rejected the proposition that if a defendant were released on bond under the Bail Reform Act, immigration authorities "would act in a way that can only be described as irrational" given that the defendant's prosecution is the result of the coordination between two Executive Branch agencies. *Id.*

The issue at hand in the instant matter, as in all of the cases discussed above, "is not that [the] defendant will absent himself from the jurisdiction, but that two Article II [Executive Branch] agencies will not coordinate their respective efforts." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180 *(quoting Barrera-Omana*, 638 F. Supp. 2d. 1108, 1111-12 (D. Minn. 2009)). The Executive Branch, through the U.S. Attorney's Office, wants

to prosecute the defendant, and the same Executive Branch, through the Department of Homeland Security, wants to deport him. It is not this court's role "to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. The Court ought not run interference for the prosecuting arm of the government." *Id.*

Simply stated, the government should not be able to have it both ways – initiate removal proceedings and then claim that the outcome of those proceedings makes the defendant a voluntary flight risk under the Bail Reform Act, simply because the government wants the decision on his immigration status to precede the decision of his guilt on the criminal charges. Here, the Executive Branch has made the choice to obtain an Order of Removal against the defendant, and that is their right. However, "[w]hat neither ICE nor any other part of the Executive Branch may do . . . is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1179. This Court cannot and will not "run interference for the prosecuting arm of the government" based on the choice the Executive Branch makes in this case. *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180 *(quoting Barrera-Omana*, 638 F. Supp. 2d. 1108, 1111-12 (D. Minn. 2009)).

In the case at hand, notwithstanding the Magistrate Judge's Order that the defendant be released from custody pending his trial, the Executive Branch chose to detain the defendant in immigration custody and attempt to proceed with the defendant's removal proceeding, with the likely goal of obtaining an Order of Removal. Mr. Robles-Sotelo

has not requested removal, rather, he wishes to remain in the United States during the

pendency of his case. It is the Government that seeks removal at this point, not the

defendant. The fact that the defendant may not have sufficiently contested his removal

from the United States is irrelevant to the analysis of whether the defendant should now

be detained pending trial under the Bail Reform Act. The government knows very well

that even if the defendant had more vigorously fought his removal, he would have

remained in immigration custody even though he was ordered released pending trial

under the Bail Reform Act. It was, and continues to be, the government's obligation, not

the defendant's (who had no right to counsel), to let the immigration court know that the

defendant was ordered released from custody pending trial on the criminal charges.

Rather than doing so, the government chose to ignore the release order, detain the

defendant, and proceed with the removal proceedings.

    As a result of this choice, the Executive Branch can certainly remove the defendant

immediately and perhaps end the criminal prosecution. However, the Executive Branch

still has several options to prevent the defendant's removal from the United States while

the criminal case is pending. First, as the Ninth Circuit noted in *Castro-Inzunza,* as well

as the district court in *Trujillo-Alvarez*, the Executive Branch need not execute the order

of removal within 90 days because he would still be "confined" by virtue of being

subject to pretrial release conditions. Second, as also discussed in those cases and in the

many other district court cases discussed earlier, the government could stay or delay the

execution of a removal order until the criminal case is resolved. Third, the government

could parole the defendant into the United States while the criminal charges are pending. Thus, the defendant need not be immediately removed from the United States even if an Order of Removal had been obtained. While the U.S. Attorney's Office may not have significant control over administrative removal proceedings, just as the Department of Homeland Security may not have much control over criminal prosecutions, the two Executive Branch agencies are nevertheless regularly called upon to coordinate their efforts on a criminal prosecution of a removable alien. This obligation to do so is set forth in the Bail Reform Act, which, as stated above, takes precedence over the INA. Examples of this Executive Branch regular coordination are bountiful and include, but are not limited to: DHS notifying the U.S. Attorney's Office of a removable alien in their custody who meets criminal prosecution guidelines and U.S. Attorneys include language in their plea agreements that require a defendant to stipulate to their removal under the INA. This coordination is routine and not unusual.

**CONCLUSION:**

The complaint in this case should be dismissed for failure to comply with the Speedy Trial Act. It has been nearly 60 days since the defendant's arrest. He has not been indicted and no Information has been issued. Also, no excludable delay has been sought nor ordered.

Moreover, For the reasons discussed above, there is no reason that through coordinated efforts, the Executive Branch cannot comply with both the Bail Reform Act and the provisions of the INA governing removal of an alien while a criminal case is

1

2

pending. It is respectfully requested the defendant be released from custody pursuant to

the conditions imposed by Magistrate Judge Rateau on May 20, 2021.

3

4

RESPECTFULLY SUBMITTED this 15th day of June, 2021.

5

**/S/ Benjamin W. Aguilera**

Benjamin W. Aguilera

6

Attorney for Ignacio Robles-Sotelo

7

8

9

Certificate of Service

10

I hereby certify that on June 15, 2021, I electronically transmitted the attached document

11

to the Clerks' Office using the CM/ECF System for filing and transmittal of a Notice of

Electronic Filing to the following CM/ECF registrants:

12

13

heather.moilanen-miller@usdoj.gov

14

15

By _____BA_____

6203 - Robles-Sotelo - mot to dismiss

16

17

18

19

20

21

22

23

24

25

26

27

28

14